OPINION
On September 15, 1997, appellee, the Stark County Department of Human Services, filed a complaint for permanent custody of Marcus Ware born February 7, 1986, Labriant McCullough born June 29, 1991, Christian McCullough born October 15, 1992 and DeLantray Stinnett born August 24, 1994, alleging the children to be neglected and/or dependent. Mother of the children is appellant, Amanda Stinnett. The alleged fathers of the respective children are Marcus Ware, Mark McCullough and Chris Hayes or Herman Gaston. A hearing was held on June 17, 1998. By judgment entry dated same date, the trial court denied the complaint for permanent custody and placed the children in long term foster care with appellee. On November 24, 1999, appellee filed a complaint for permanent custody of Labriant, Christian and DeLantray alleging the children to be abandoned. On same date, appellee filed a motion for compelling reasons not to file for permanent custody on Marcus. A hearing was held on January 27, 2000. By judgment entry filed February 24, 2000, the trial court awarded permanent custody of the children to appellee. The trial court also filed findings of fact and conclusions of law. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I, II
Appellant claims the trial court's decision in granting permanent custody of the children to appellee was against the manifest weight of the evidence. Appellant claims the evidence fails to establish the decision is in the best interests of the children and the children cannot be placed with the her within a reasonable time. We disagree. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. R.C. 2151.41.4(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.35.3 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.35.3 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.35.3 of the Revised Code;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
(10) The parent has abandoned the child.
 (13) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;
(16) Any other factor the court considers relevant.
R.C. 2151.41.4(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.41.4(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
Appellee first became involved with the family in 1996. On July 8, 1996, the children were placed in appellee's temporary custody due to appellant's drug dependency (cocaine) and the children's lack of supervision and deplorable living conditions. See, Judgment Entry filed July 8, 1996. All the alleged fathers were in prison. Id. By judgment entry filed September 3, 1996, the trial court found Marcus, Labriant and Christian to be dependent and DeLantray to be neglected. A case plan was filed wherein appellant was required to become drug and alcohol free, improve her parenting skills and provide the children with a stable home environment. Appellant was to attend Quest Recovery Services not only as part of the case plan but also at the direction of Canton Municipal Court Judge Stephen Belden as a result of a possession of drug paraphernalia charge. Appellant did attend Quest as required, but did not complete the program and had no involvement with the program from July of 1999 to just before the hearing. T. at 10; State's Exhibit E. In fact, on August 10, 1999, Quest discharged appellant due to "[r]epeated no shows." State's Exhibit E — Client Discharge Due to Noncompliance. Appellant was also required to attend Nova. Appellant attended for five months in 1998 and then failed to appear. T. at 11; State's Exhibit C. The report of those five months indicates numerous "no shows" and states "[s]he attends groups sporadically due to her continued abuse of crack, her drug of choice. She showed little or no motivation to regain custody of her children." State's Exhibit C — Treatment Episode Summary dated September 17, 1998. As a result, Nova terminated her case. Id. Appellant went back to Nova in December of 1999 but after two sessions she was referred to Quest. T. at 11. Linda Ledgerwood, a caseworker assigned to the family for two years, testified appellant did not substantially comply with the case plan. T. at 18. After the children were placed in long term foster care, the case was assigned to another caseworker, Andy Fussell. Mr. Fussell has been involved with the family for two years. T. at 22. Mr. Fussell testified appellant has not complied with the objectives of the case plan. Id. Appellant had not visited with the children in the year prior to the hearing. T. at 12, 23. Appellant claimed that she called Mr. Fussell after a missed visit to reschedule the visit, but Mr. Fussell "refused to have me visit again." T. at 12. Mr. Fussell testified that he never denied appellant visitation. T. at 24. Mr. Fussell did ask appellant to first "come into the office * * * to have a discussion about the training of the children, her lack of visits for several months," but appellant did not show up for the scheduled appointment. Id. Appellant claimed she now had stable housing, but did not inform Mr. Fussell of that fact until the week before the hearing. T. at 23. The alleged fathers never showed up for any hearings and during the course of the case, were in prison. T. at 19. The children have been in appellee's custody for over three and a half years. T. at 12. Mr. Fussell testified Labriant, age eight, has experienced "a lot of disturbances and started acting out in school with very aggressive behaviors." T. at 36. However, he receives counseling and is "stabilizing" and there is nothing that would prevent "permanency planning." Id. Christian, age seven, has also experienced emotional problems and he too receives counseling. T. at 37. While he is not stabilized at this point, Mr. Fussell opined there was nothing that would prevent his permanency planning. Id. DeLantray is five years old. He too receives counseling and is "showing some positive movements" toward stabilization. T. at 38-39. There is nothing that would prevent his permanency planning. T. at 39. There is a possibility that one or two of the respective foster homes of the children may be interested in adoption. T. at 41. As for all of the children being adopted together, Mr. Fussell testified appellee would "do our best to maintain them together." T. at 42. By failing to complete the case plan in a reasonable time and in particular, failing to support, visit or communicate with the children, provide stable housing and successfully complete the required programs, appellant and the alleged fathers have demonstrated that it is not in the children's best interests to be in the custody of either of their respective parents. The children were placed in appellee's temporary custody on July 8, 1996. Over an approximate three and a half year period, appellant failed to fulfill the requirements of the case plan. Upon review, we find there was clear and convincing evidence to support the trial court's decision to grant permanent custody of the children to appellee. Assignments of Error I and II are denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is hereby affirmed.
GWIN, P.J. and WISE, J. CONCUR.